UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:04CV-101-R

ROGER EARL MCCUISTON                                                                                            PLAINTIFF

v.

INGRAM BARGE CO.                                                                                                   DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on the parties' briefs (Dkt. Nos. 16 & 18). Additionally, the parties have filed responses (Dkt. Nos. 19 & 20). The matter is now ripe for decision. For the reasons that follow, the decision of the plan administrator is **AFFIRMED**.

**BACKGROUND**

Plaintiff Roger McCuiston filed this action for review of the ERISA plan administrator's decision to deny his application for severance pay after he resigned on November 3, 2003. Ingram Barge Company ("Ingram") took control of Mr. McCuiston's employer Walker Boat Yard in July of 2002. In August 2002, Mr. McCuiston accepted an offer of employment with Ingram to continue as the Shipyard Division Manager.

Mr. McCuiston claims that Ingram's actions should be considered an involuntary termination because Ingram reduced his responsibilities and he underwent a substantial adverse change in working conditions. On January 10, 2003, Mr. Tom Smith became Mr. McCuiston's supervisor, which Mr. McCuiston claims was an adverse changed due to their inability to get along well. After that, Ingram took Mr. McCuiston's supervisory responsibility for the machine shop on January 27, 2003, for the maintenance shop on April 17, 2003, and for the electric shop on April 25, 2003. In August and October of 2003, Mr. McCuiston sent confidential letters to Ingram management citing

1

his concerns that he might be fired or his plans to resign and asking about benefits should he decide to resign. On November 3, 2003, Mr. McCuiston resigned and soon after he applied for severance pay. The plan administrator denied his request for severance pay on March 5, 2004.

## STANDARD

This court has previously determined that the Plan at issue here is regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Because claims based upon ERISA are equitable in nature, jury trials are inappropriate and unavailable. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). Furthermore, the Sixth Circuit has held that neither bench trial nor summary judgment are appropriate vehicles for reviewing ERISA plan participant challenges to benefit determinations. *Id.* at 618-20. Instead, district courts are to engage in a review based solely upon the evidence before the plan administrator at the time of its decision. *Id.*; *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966-67 (6th Cir. 1990).

Both parties agree that this court's standard of review should be *de novo*. When reviewing administrators' benefit determinations, courts generally inspect the decision through the lens of a *de novo* review. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[T]he de novo standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." *Id*. Under a *de novo* standard of review, this court must determine whether the administrator made a correct decision without giving any deference or presumption of correctness to the administrator's decision. *Hoover v. Provident Life and Acc. Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002).

## DISCUSSION

The sole issue before this court is whether Mr. McCuiston was subjected to an "involuntary termination of employment" under the severance plan so as to entitle him to benefits under the plan. Under section 3.10 of the plan, an "Involuntary Termination of Employment" is defined as

> any termination of a Participant's employment occurring during the Participant's Protected Period, other than a termination due to–
> (a) death;
> (b) total and permanent disability;
> (c) voluntary retirement in accordance with the terms of an employment pension benefit plan maintained by Eastern or a Subsidiary;
> (d) except as provided below, resignation by the Participant.
>
> A resignation by the Participant occurring during the Participant's Protected Period will be deemed for all purposes of the Plan to be an Involuntary Termination of Employment if such resignation occurs within 60 days after the occurrence within the Protected Period of any of the following events:
> (i) a reduction in the Participant's compensation (including in the case of commissions only a reduction in the Participant's commission rate) or salary grade, a material diminution in benefits or a substantial adverse change in the Participant's working conditions;
> (ii) a material diminution in the Participant's job responsibility or authority; or
> (iii) relocation of the Participant's regular assigned workplace by more than 50 additional miles from his or her residence;
> and such Involuntary Termination of Employment will be deemed to have taken place on the occurrence of such event.

(Dkt. # 15).

Mr. McCuiston argues that when Ingram decided in January 2003 that Tom Smith would be Mr. McCuiston's supervisor, a substantial adverse change in Mr. McCuiston's working conditions occurred. Additionally, Mr. McCuiston argues that when Ingram took away his supervisory responsibilities for the machine, electric, and maintenance shops, which occurred before April 15, 2003, he received a material diminution in his job responsibility or authority. This court agrees with Mr. McCuiston that this could have resulted in a material diminution of his job responsibility.

3

Ingram argues that Mr. McCuiston did not resign until November 2003 more than 60 days after his job responsibilities were diminished in April 2003. This court agrees with Ingram that Mr. McCuiston suffered no adverse change or diminution of job responsibility in the 60 days prior to his resignation. Even though in October 2003, Mr. McCuiston sent letters inquiring about what his benefits would be if he resigned, Mr. McCuiston received no adverse change in his employment or any diminution. In the 60 days prior to his resignation, Mr. McCuiston was still the supervisor of the same number of people and had the same job duties, and he still reported to Tom Smith. Nothing changed about his job. Instead, he merely sent a letter on October 17, 2003, where he asked questions and received answers, which can not be considered an adverse change or diminution of his job duties. While Mr. McCuiston may not have received the response that he wanted and his thoughts about his job changed, his job itself did not change.

## CONCLUSION

Mr. McCuiston did not resign within 60 days of any adverse change or material diminution of his job responsibilities. Therefore, the decision of the plan administrator is **AFFIRMED**.